UNITED STATES of America, Plaintiff,

v.

ENZYMATIC THERAPY, INC., a corporation; Bio–Therapeutics, Ltd., a corporation; LEM's Contract Printing, Inc. (A.K.A. "LEM'S Printing Shop," "Vital Communications, Inc.," and "Lee's Contract Printing"), a corporation; Bay Natural Foods, a proprietorship; Terrence J. Lemerond, an individual; and Bradley Lemerond, an individual, Defendants.

No. 91–C–1174.

United States District Court,
E.D. Wisconsin.

Oct. 26, 1992.

Deputy U.S. Atty. Nathan A. Fishbach, Asst. U.S. Atty. Stephen A. Ingraham, Jay I. Bratt, Office of Consumer Litigation, U.S. Dept. of Justice, for plaintiff.

Robert E. Armstrong, Gronek and Armstrong, Chicago, IL, for defendants.

## DECISION AND ORDER

GOODSTEIN, United States Magistrate Judge.

By order dated July 24, 1992, at the request of the parties, Judge Myron L. Gordon referred this case to this court for binding arbitration. The case has been settled except for the entry of a consent decree. The parties disagree as to which one of two consent decrees should be entered, and it is the role of this court to determine which consent decree shall be selected. The parties have executed both, and have agreed to abide by this court's decision. On July 24, 1992 the court conducted a conference with the parties to discuss the procedures to be utilized in resolving this dispute. The parties subsequently made written submissions to the court, and with these submissions complete, the matter is ready for resolution.

The dispute centers around 56 health related products which the defendants currently manufacture and promote, but which have not received approval from the Food and Drug Administration (FDA). The FDA asserts that the products are mislabelled and misrepresent the therapeutic value of the products. The products remain on the market until one of the consent decrees is entered by the court.

The two consent decrees differ only slightly; under both decrees the defendants will be restrained and enjoined from manufacturing and marketing the 56 products as they are currently named and labeled. Under both decrees, the defendants will have the opportunity to submit twenty new names and labels for existing products on the prohibited list. The FDA will respond within forty days, and the defendants may then submit (or resubmit) twenty more, again with a forty day turn around by the FDA. The defendants may

then submit (or resubmit) any remaining products from the list of products, and the FDA will complete its review within a "reasonable time," which may be more than forty days.

Under the first decree, advocated by the government, the prohibition takes effect immediately upon actual notice of the consent decree. Under the defendants' preferred version, there is a delayed effective date of up to sixty days.

Under the immediate prohibition decree, the defendants may submit products to the FDA immediately for the forty day review. Under the delayed prohibition, the defendants may submit products "within seven days."

The practical difference between the two decrees appears to be the length of time which may elapse from the effective date of the prohibition before the defendants are able to reintroduce all of their products into the market under new names and labelling. To illustrate, assume that the defendants obtain approval of all twenty products in each round of submissions. Assume further that each round of submissions takes forty days to review, and that under either scenario, the defendants make their initial submissions immediately upon entry of the court's order.

Under the government advocated immediate prohibition decree, all of the defendants' products will be removed from the market; forty days after entry of the court's order, assuming full approval, the defendants will be able to reintroduce twenty products under new names and labels. After one hundred twenty days, the defendants could have all 56 products back on the market under new names and labelling.

Under the defendants' advocated sixty day delayed prohibition decree, the defendants could submit products for approval immediately (or within seven days), receive approval within forty days, and have twenty days remaining before the effective date of the decree. Again assuming full approval of the newly named and labelled products, the defendants would have these

twenty days to introduce twenty newly named and labelled products into the market, before any of the challenged products would have to be removed from the market. Twenty more products might be off the market for only twenty days, before being reintroduced under a new name and label. Within sixty days, all 56 products could be back on the market under new names and labels.

The issue, then, becomes a matter of equity: The defendants argue that they sought approval of the new products and labelling, but the FDA failed to provide a timely review. The government claims that the defendants had ample time and opportunity to obtain review, but delayed, and failed to avail themselves of opportunities.

Both parties point out that they worked through difficult settlement procedures to reach this point, wherein only a single disputed issue remains. Both parties attempt to place blame on the other and assert that the other party could have done something more in furtherance of its position to have avoided this dispute. Both parties seek vindication of their position in this argument.

The parties are to be commended for crafting a settlement of this case, and in view of their efforts to this point, nothing would be achieved by considering who has the cleanest hands in this litigation. The more germane concern should be with the effects of this decision on the parties and the public.

The government contends that the products currently on the market make therapeutic claims which are unsubstantiated and misleading. The government does not claim that the products are, of themselves, dangerous; rather, consumers may be mislead into unwarranted reliance on the products.

The defendants advocate maintaining the status quo for up to sixty more days, in what is historically a closely regulated market. Under the decree proposed by the government, the defendants will have to wait forty days before they might have the opportunity to reintroduce products into the market. Under the defendants' preferred version, all of their products would remain on the market for an additional sixty days, possibly allowing the defendants to engage in a twenty day transition, whereby the newly approved products could be promoted as the "new and improved form of ..." the old product. The two products could then sit on the shelf side by side.

As previously stated, the parties have reached a settlement, and it is not necessary to revisit the historical underpinnings of this dispute. The court is persuaded that, on balance, the decree proposed by the government is the most equitable. The court recognizes that the defendants' products have been on the market for some considerable time, and the defendants must be thinking, "what difference can another sixty days make?" But, if the government's concern, that people are unduly relying upon the defendants' products, is true, sixty days might be significant. An immediate prohibition is clearly a hardship on the defendants, but Congress has deemed federal regulation necessary for the public welfare, and regulatory hurdles are a price that any company entering the health care market is expected to pay. The court does not perceive that an immediately effective prohibition at this point in time is unduly problematic or unfair to the defendants' interests, their ability to conduct business, and at least the consent decree affixes some priority to the review process for the products in question. The government has presented reasons, consistent with its role as a regulatory agency, why it believes that the defendants products should not remain on the market. The court finds that the preferable course of action is to literally wipe the market slate clean of the defendants' products as presently labeled for a limited period of time and then permit introduction of "new" products into the market.

It is therefore the decision of this court that the parties be bound by the government advocated consent decree, appended to this decision, providing for an immediate prohibition. The court directs the clerk to

return this file to Judge Gordon, for the execution of the consent decree and any further necessary proceedings.

SO ORDERED.